IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 2:18-cr-146 |
| | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| NORMAN D. PETERSON, | : | Magistrate Judge |
| | : | Elizabeth Preston Deavers |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

This matter is before the court on the defendant Norman Peterson's Motion to Suppress Physical Evidence. (ECF No. 22). For the reasons below, this Court **DENIES** the Motion to Suppress.

## I. Background

The Columbus Police Department, along with the Bureau of Alcohol, Tobacco, and Firearms (ATF) had been conducting an investigation involving stolen motor vehicle trafficking, identity theft, and narcotics trafficking. (ECF No. 33 at 5). On July 19, 2018, ATF Task Force Officer Samuel Chappell submitted and obtained a search warrant from Magistrate Judge Elizabeth Preston Deavers. (ECF No. 33 at 5). The search warrant was for a residence at 9264 Jackies Bend, Reynoldsburg, Ohio.

Law enforcement had this residence under surveillance since 2017. (ECF No. 33, Ex. 1 at 2). During surveillance, officers determined the cars in the garage were stolen by matching the VIN and license plate information to databases reporting stolen or cloned VIN details from other states. (ECF No. 33, Ex. 1 at 3-4). During the course of the investigation, the affidavit says approximately seventeen suspected stolen or cloned vehicles were identified; six had been

1

located and confirmed stolen. Each had a "washed fraudulent out of state title." (ECF No. 33, Ex. 1 at 4).

In addition, on September 21, 2017, law enforcement conducted a trash-pull at the residence of one of the individuals under surveillance. Two discarded cell phones were recovered. On the phones were text messages with details about the cars; these details matched information that law enforcement had about suspected stolen cars being moved by the individuals under surveillance. (ECF No. 33, Ex. 1 at 4).

The affidavit somewhat cryptically says that "investigators learned of a residence being utilized to store one of the suspected stolen vehicles." (ECF No. 33, Ex. 1 at 6). This was the Jackies Bend residence, and investigators began surveillance. The vehicle in question was a 2014 Mercedes CLS550, with Mississippi license plates HUU751. This Mercedes was initially seen outside a nightclub in Columbus, whereupon Mississippi authorities were contacted; they confirmed the car was classified as "junk salvage," which "would prevent it from ever being lawfully titled in Ohio." (ECF No. 33, Ex. 1 at 7).

In November 2017, Defendant Norman Peterson was seen leaving the Jackies Bend residence in that Mercedes. (ECF No. 33, Ex. 1 at 7). The same Mercedes was observed leaving the Jackies Bend residence and was observed parked in the garage on multiple occasions over a period of eight months, from November 2017 to July 2018. (ECF No. 33, Ex. 1 at 7-8).

The Jackies Bend residence was rented to a Jenny Kimbrell on October 30, 2017. (ECF No. 33, Ex. 1 at 8). The driver's license used to secure the lease for the residence was fraudulent; the number belongs to a male driver in Georgia. (ECF No. 33, Ex. 1 at 9). The photograph on the license used to rent the Jackies Bend residence was of an African-American female. (ECF No. 33, Ex. 1 at 9). Officer Chappell interviewed Ms. Kimbrell on July 18, 2018. She identified

herself as a white female, said she had never traveled to Ohio, and had not willingly provided her personal information to anyone to rent the Jackies Bend residence. (ECF No. 33, Ex. 1 at 9). On July 12, 2018, law enforcement saw Peterson exit the garage of the Jackies Bend residence, pull the trash cans from the street inside the garage, and close the garage door.

Officer Chappell averred that Peterson, along with others he observed, were "engaged in largescale conspiracy involving the interstate trafficking and possession of stolen high dollar vehicles." (ECF No. 33, Ex. 1 at 9). He further asserted that, being "familiar with the methods, schemes, and operations used by individuals involved with large scale criminal activity including the possession and trafficking of stolen vehicles" he was "aware that individuals engaged in fraud and large scale trafficking of stolen property offenses sometimes utilize firearms to protect their illegal property and proceeds." (ECF No. 33, Ex. 1 at 9).

Magistrate Judge Deavers authorized this search warrant, which was executed on July 20, 2018. On that date, law enforcement announced their presence at Jackies Bend, and saw Peterson "look out of a bedroom window towards the front of the residence." (ECF No. 33 at 6). Officers gave Peterson a change to open the door, which he did. He was then arrested pursuant to a pending arrest warrant; the arrest warrant was based on charges that have since been dismissed. (ECF No. 35). There was no one else home at the time. The residence was then searched as authorized by the search warrant. Officers found a loaded Glock .40 caliber handgun in the master bedroom and a .380 caliber Cobra Arms pistol in the kitchen, in addition to "over $45,000 in U.S. currency and varying types of ammunition." (ECF No. 33 at 6).

Defendant moved to suppress the physical evidence from this search warrant. Specifically, he argues that the warrant grew out of an investigation into stolen vehicles, so the search should have been limited to the garage, because there was only probable cause with

3

respect to the fruits of a stolen car operation. As a result, he argues that the recovered firearms and ammunition should be suppressed. (ECF No. 22 at 6-7).

The government argues the search warrant was properly authorized by Magistrate Judge Deavers and was properly executed by the officers, and so urges this Court to deny the Motion to Suppress. First, the government argues that the defendant failed to meet his *Franks* burden to challenge the validity of the search warrant because he did not present any evidence to suggest the warrant was based on false information. (ECF No. 33 at 10). Second, the government argues that the search warrant established probable cause for the search of the Jackies Bend residence because it details observations from a lengthy investigation and is based on the officers' training and experience. (ECF No. 33 at 11). Finally, in the alternative, the government argues that because the warrant was not so facially invalid as to render unreasonable officers' reliance on it, it was valid under *Leon*'s objective "good faith" test. (ECF No. 33 at 12-13).

## II. Analysis

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment also requires that a warrant issue only "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Before a magistrate judge issues a search warrant, there must be a finding of probable cause. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). Probable cause rests on more than mere suspicion, but less than a "prima facie showing of criminal activity." *Spinelli v. United States*, 393 U.S. 410, 419 (1969) (citing *Beck v. Ohio*, 379 U.S. 89, 96 (1964)). The issuing magistrate looks at the "totality of the circumstances…to make a practical, common-sense decision whether, given all the

circumstances set forth in the affidavit before [her]...there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Then, it is the "duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 238-239. The magistrate's ruling is accorded "great deference." *Id.* at 236 (quoting *Spinelli*, 393 U.S. at 419).

When a defendant seeks to challenge the validity of a search warrant that a magistrate approved, she is entitled to a *Franks* hearing when she "makes a substantial preliminary showing that a false statement, knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and… the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). If the defendant successfully proves the *Franks* factors, suppression may be an appropriate remedy.

The defendant in the instant case, Mr. Peterson, is unable to carry his *Franks* burden of proof. The defendant has not attacked the search warrant on the grounds that it contains or was based on false information; neither has the defendant argued that the execution of the warrant was faulty in some way. The defendant has argued that the search warrant was too broad because it should have been limited to the garage alone, but this claim must fail.

A. *The Scope of the Warrant*

The defendant first argues that the search warrant was too broad because, in a case alleging stolen cars, it authorized the search of the house, too. This argument fails because the warrant's application to the house was appropriate given the supporting affidavit.

The particularity requirement of the Fourth Amendment requires "a neutral judicial officer to cabin the scope of the search to those areas and items for which there exists probable cause that a crime has been committed." *Baranksi v. Fifteen Unkwown Agents of Bureau of*

5

*Alcohol, Tobacco, and Firearms*, 452 F.3d 433, 441 (6th Cir. 2006). When reviewing applications for warrants, "courts must bear in mind that search warrants are directed not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998). *See Zurcher v. Stanford Daily*, 436 U.S. 547 (1978). In the instant case, the items to be seized – the indicia of the conspiracy – would logically be kept in the home, not the garage. Therefore, the warrant was not overly broad to authorize the search of the home, not merely the garage, even though the investigation stemmed from an alleged stolen car operation.

The affidavit by Office Chappell is clear and thorough and reflects months of information gathering. The affidavit explains the nexus between the focal point of the investigation – the allegations of a stolen car ring being operated out of the garage – and the request to search the house. First, the affidavit details the repeated visits by persons of interest and the contents of the trash-pulls. Second, the affidavit contemplates that indicia of the conspiracy – documents, papers, books, records, currency counters, and so on – would be located in the house, and the search warrant details these indicia specifically.

The search warrant does not, on its face, limit the search to the garage; indeed, given that the items to be seized are logically kept in the house, it was reasonable for officers to assume the search warrant *was not* limited to the garage. As a result, the defendant's *Franks* challenge must fail.

B. *The Content of the Search Warrant*

The defendant next argues that including "firearms and ammunition" in the search warrant was improper. The transition in the search warrant from listing items to be seized based on their clear relationship to the previously-detailed investigation – books, records, currency – to

6

a generic recitation of "firearms and ammunition" is somewhat dizzying. (ECF No. 33, Ex. 1 at 12-13). As compared to the observations supporting the seizure of documents and currency, for example, Officer Chappell's observations with respect the possibility of weapons or firearms are more perfunctory. He writes, "I am also aware that individuals engaged in fraud and large-scale trafficking of stolen property offenses sometimes utilize firearms to protect their illegal property and proceeds." (ECF No. 33, Ex. 1 at 9). Although the defendant is forbidden from owning firearms as a result of prior felony convictions, he correctly noted in his motion to suppress that "firearms are generally lawful to possess." (ECF No. 22 at 7). The affidavit details multiple individuals who visit the Jackies Bend residence at least somewhat regularly, and there is nothing to suggest that any firearms discovered would not be the property of someone with the right to possess them.

The defendant relies on *United States v. Le Bron,* 729 F.2d 533 (8th Cir. 1984) for the proposition that listing "firearms and ammunition" in the warrant was impermissibly broad and vague. In *Le Bron,* where the defendant was suspected of being involved in a stolen property operation, the search warrant authorized the seizure of a television set and two cassette recorders; the warrant included the serial numbers of each of these three items. But the warrant also authorized seizing "other property, description unknown, for which there exists probable cause to believe it to be stolen." *Le Bron*, 729 F.2d at 536. The Eighth Circuit rejected this last paragraph, saying it contained "conclusory language" and "wasn't descriptive at all." *Id.* at 537. The problem with the warrant in *Le Bron* was that it contained "no means distinguishing between stolen property and property that is not stolen [was] delineated; moreover, the distinction is not one that is readily apparent." *Id.*

*Le Bron* can be distinguished from the instant case, however. Courts have authorized search warrants that describe a "generic class of items" to be seized. *See United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988) (approving a warrant with a "generic class of items" in part because it "did not leave room for the officers to exercise unlimited discretion); *see also United States v. Porter*, 831 F.2d 760, 764 (8th Cir. 1987) (finding a description of "the stamps and currency by generic classes" to be "reasonably specific under the circumstances of this case"). The degree of specificity required in a search warrant varies by the crime suspected and the items sought, but courts have required warrants to limit officers' discretion, and to be "as specific as the circumstances and the nature of the activity under investigation permit." *Henson*, 848 F.2d at 1383. *See also United States v. Robinson*, 139 Fed. Appx. 654, 657 (6th Cir. 2005) (unpublished).

A search warrant that requires officers to use their discretion to determine what is or is not stolen property is different from a search warrant that authorizes the seizure of items fitting the description "firearms and ammunition." The search warrant in *Le Bron* was problematically vague for listing "other property, description unknown" and delegating to officers the task of determining the status of every item in the house – and for failing to give officers any criteria on which to make that determination. By contrast, listing "firearms and ammunition" complies with the practice of describing a "generic class of items" to be seized – a practice which, as above, courts have generally upheld. *See Henson, supra; Porter, supra.* The latter warrant requires no additional discretion of the officers, and clearly delineates a set of items of interest, as distinct from the rest of the objects officers might find while executing a search warrant in a house.

Officer Chappell's perfunctory conclusion alone will not doom the affidavit or search warrant: for the reasons discussed above, both are otherwise thorough, facially valid, and the

defendant has not made a showing of false information in either one. In addition, although "firearms and ammunition" is a generic class of items, courts have held search warrants with such listings to be valid and distinct from warrants with merely "conclusory language."

### III. Conclusion

As a result of the foregoing analysis, this Court **DENIES** the Defendant's Motion to Suppress.

**IT IS SO ORDERED.**

                                           s/Algenon L. Marbley
                                           **ALGENON L. MARBLEY**
                                           **UNITED STATES DISTRICT JUDGE**

**DATED:** January 4, 2019